UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 22-133-01 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| EMMANUEL BLACK | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a motion to dismiss, filed by Defendant Emmanual Black ("Black"). Record Document 27. Black is under indictment for possession with intent to distribute marijuana (Count One) and possession of a firearm by an unlawful user of a controlled substance (Count Two). Record Document 33. Black seeks to dismiss Count Two of the indictment pending against him. The Government has filed an opposition to the motion. For the reasons below, the motion is **DENIED**.

I.   Legal Standard.

Before trial, a criminal defendant may file a motion asserting that an indictment is defective because of a "lack of specificity" or "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(iii) and (v). "An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any

1

uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." Id. (internal marks omitted).

In considering a motion to dismiss an indictment, the Court must take the facts as set forth in the indictment as true. United States v. Kay, 359 F.3d 738, 742 (5th Cir. 2004); see also United States v. Radley, 632 F.3d 177, 180 (5th Cir. 2011) ("The allegations in the indictment are presumed true for present purposes."). While the indictment must at least state the facts and circumstances of the alleged offense such that the accused will be informed of the charge against him, the indictment does not have to "articulate the evidence that will be used to prove the allegations." United States v. Pratt, 728 F.3d 463, 478 (5th Cir. 2013). "The Constitution requires only enough specificity to allow the defendant to defend against the allegations." Id.  A review of the sufficiency of an indictment "is governed by practical, not technical considerations." United States v. Rainey, 757 F.3d 234, 247 (5th Cir. 2014).

II.     Analysis.

Black was initially indicted on June 15, 2022. Record Document 14. In that indictment, Count Two charged him with being an "unauthorized user" of a controlled substance who knowingly possessed a firearm, in violation of 18 U.S.C. § 922(g)(3). Id. Black's motion first seeks to dismiss Count Two for failure to state an offense because the governing statute—§ 922(g)(3)—bars possession of a firearm by an *unlawful* user, not an *unauthorized* user. Second, Black challenges the constitutionality of § 922(g)(3), arguing it is an unconstitutional restriction of the Second Amendment and that it is unconstitutionally vague.

After Black filed the instant motion to dismiss, the Government obtained a superseding indictment which amended the language of Count Two by charging Black with being an "unlawful" user of a controlled substance. As such, the Court deems the motion to dismiss on this basis to be moot, as Count Two now states an offense. The Court will address the arguments as to the constitutionality and vagueness of § 922(g)(3) in turn.

    A.    Constitutionality of Section 922(g)(3)

Black argues that Count Two of the Indictment must be dismissed because § 922(g)(3) is unconstitutional under the Second Amendment. The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. As relevant here, § 922(g)(3) makes it unlawful for anyone "who is an unlawful user of or addicted to any controlled substance" to possess a firearm or ammunition. 18 U.S.C. § 922(g)(3).

The Supreme Court has examined the scope of the Second Amendment and the permissible limitations thereon on several occasions. In District of Columbia v. Heller, 128 S. Ct. 2783 (2008), the Court confronted a law which banned handgun possession in the home. After conducting a thorough textual and historical analysis of the scope of the Second Amendment, the Court concluded that the Second Amendment codified an individual preexisting "right to keep and bear arms." Id. at 2797-98. The Heller Court struck down the District of Columbia law, which implemented a total ban on the possession of a handgun in the home, based on the Second Amendment's guarantee of the right to bear arms. Id. at 2798, 2821. However, the Court was quick to caution that the Second

Amendment right to keep and bear arms was "not unlimited" and that certain restrictions on that right were permissible and in keeping with history and tradition.  Id. at 2799, 2816-17.

More recently, in New York State Rifle & Pistol Association v. Bruen, the Supreme Court reexamined the Second Amendment's right to keep and bear arms.  New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022).  There, the Court addressed the constitutionality of a New York licensing scheme which allowed officials to deny concealed-carry permits even though an applicant had satisfied the permit's threshold criteria.  In Bruen, the Court set forth the proper framework to analyze Second Amendment challenges:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest.  Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

Id. at 2126 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 n.10 (1961)).

Bruen explained that "[w]hen confronting such present-day firearm regulations, this historical inquiry that courts must conduct will often involve reasoning by analogy" which "requires a determination of whether the two regulations are 'relevantly similar.'" Id. at 2132.  To establish the challenged regulation is "consistent with this Nation's historical tradition," the government must "identify a well-established and representative historical analogue, not a historical twin.  So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional

4

muster." Id. at 2133. "Whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." Id. (internal marks omitted). While the government bears the burden to establish § 922(g)(3) is constitutional, the Court notes that Black's sole argument to support his contention of unconstitutionality in this case is that "the government cannot prove that 18 U.S.C. § 922(g)(3) is [a] lawful restriction on gun ownership based on text, history, and tradition . . . [and it] is therefore unconstitutional." Record Document 27, p. 3.

The first step of the Bruen inquiry is to determine whether the Second Amendment covers Black's conduct. Black does not address this question, whereas the Government argues that the Second Amendment extends its rights only to "the people," who are law-abiding, responsible citizens. Record Document 32, p. 5. The Court's own research has demonstrated that jurists nationwide are grappling with whether the Second Amendment protects the right to bear arms for all, or rather, only the rights of law-abiding citizens. The majority of courts have concluded that the right extends only to law-abiding citizens. Compare Range v. Attorney General United States, 53 F.4th 262, 266 (3d Cir. 2022) ("[W]e conclude that 'the people' constitutionally entitled to bear arms are the 'law-abiding, responsible citizens' of the polity, a category that properly excludes those who have demonstrated disregard for the rule of law through the commission of felony and felony-equivalent offenses, whether or not those crimes are violent"); United States v. Sanchez, 2022 WL 17815116, at *2-3 (W.D. Tex. Dec. 19, 2022) (holding that the language of § 922(g)(3) is not covered by the plain text of the Second Amendment because the Second

5

Amendment protects the rights of ordinary law-abiding citizens); United States v. Daniels, —F.3d—, 2022 WL 2654232, at *3 (S.D. Miss. July 8, 2022) (observing that there may be "some doubt" as to whether § 922(g)(3) is covered by the plain text of the Second Amendment, given the interpretation that the right is guaranteed to "ordinary, law-abiding, responsible citizens"); and United States v. Nevens, 2022 WL 17492196, at *2 (C.D. Cal. Aug. 15, 2022) ("Defendant is not a law-abiding citizen, and regulations governing non-law abiding citizens' use of firearms do not implicate Bruen and Heller"), with United States v. Kays, —F.Supp.3d—, 2022 WL 3718519, at *2 (W.D. Okla. Aug. 29, 2022) (declining "to read into Bruen a qualification that Second Amendment rights belong only to individuals who have not been accused of violating any laws"); United States v. Bernard, 2022 WL 17416681, at *7 (N.D. Iowa Dec. 5, 2022) (rejecting "the government's argument that the Second Amendment applies only to law-abiding citizens as a textual matter"); and United States v. Charles, —F.3d—, 2022 WL 4913900, at *2, (W.D. Tex. Oct. 3, 2022) (holding possession of a firearm plainly falls within the Second Amendment's protection of the right to keep and bear arms).

The Court finds that this is not an inquiry that must be resolved here because the second prong of Bruen determines the ultimate issue of constitutionality. That is, "if there is a history and tradition of keeping guns from those engaged in criminal conduct, then the law[] here [is] constitutional whether the Second Amendment right belongs to all Americans or just to ordinary, law-abiding citizens." Fried v. Garland, 2022 WL 16731233, at *5 (N.D. Fla. Nov. 4, 2022) (quoting Heller, 554 U.S. at 581; Bruen, 142 S. Ct. at 2122) (internal marks omitted). Thus, the Court will assume arguendo that Black falls within the

6

"the people," a group protected by the Second Amendment, and will therefore proceed with the Bruen analysis.

The second prong of Bruen requires the Court to determine whether the challenged regulation is consistent with the country's historical tradition of firearm regulation.[1] The Court finds that the regulation here is consistent with historical regulations on the right to possess firearms and thus passes constitutional muster. In Heller, the Supreme Court emphasized that despite its holding that the Second Amendment conferred an individual right to bear arms, it was not undertaking "an exhaustive historical analysis . . . of the full scope of the Second Amendment, [and that] nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Heller, 128 S. Ct. at 2816–17. As the Court explained, "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." Id., n.26. In McDonald v. Chicago, 130 S. Ct. 3020 (2010), the Supreme Court reaffirmed the sentiment that Heller was not meant to create doubt about the regulations that prohibited firearm possession by certain groups of people or in certain places.

Prior to Heller and Bruen, the Fifth Circuit held that § 922(g)(3) is one such lawful exception to the Second Amendment—an exception consistent with the historical

---

[1] Black has not challenged the Government's position that this regulation comports with historical traditions or that there is a tradition of disarming those engaged in criminal conduct.

understanding of the amendment's protections. In United States v. Patterson, the court analogized § 922(g)(3)'s prohibition to similar, long-standing prohibitions which prevented the possession of a firearm by felons, or those who are subject to domestic restraining orders. Patterson, 431 F.3d 832, 835-36 (5th Cir. 2005) The court concluded that the prohibition in § 922(g)(3) was similar because it, too, targeted those who "pose a risk to society if permitted to bear arms." Id. at 836; see also United States v. Roach, 201 F. App'x 969, 974 (5th Cir. 2006) (relying on Patterson, which "explicitly affirm[ed] § 922(g)(3) as a constitutional exception to the Second Amendment"). Although Patterson was decided prior to Heller, in the post-Heller opinion of United States v. May, the Fifth Circuit affirmed its determination that § 922(g)(3) is constitutional. Indeed, there, it explained that "unlawful users of controlled substances pose a risk to society if permitted to bear arms and . . . prohibiting such persons from possessing firearms does not infringe on the Second Amendment." May, 538 F. App'x 465, 466 (5th Cir. 2013). Thus, both pre- and post-Heller, the Fifth Circuit has reaffirmed the constitutionality of § 922(g)(3), seemingly with an eye toward history and tradition, as required by the 2022 opinion in Bruen.

And, as the Southern District of Mississippi observed in United States v. Daniels, numerous other circuit courts have "upheld the constitutionality of § 922(g)(3) under Heller's standards of history and tradition." Daniels, 2022 WL 2654232, at *3 (citing United States v. Yancey, 621 F.3d 681 (7th Cir. 2010); United States v. Seay, 620 F.3d 919 (8th Cir. 2010); United States v. Dugan, 657 F.3d 998 (9th Cir. 2011); and United States v. Richard, 350 F. App'x 252 (10th Cir. 2009)). Further, in the wake of Bruen, district courts

within and outside of the Fifth Circuit have reaffirmed the conclusion that § 922(g)(3) is constitutional. See Daniels, 2022 WL 2654232, at *4 (finding § 922(g)(3) constitutional after determining that "analogous statutes which purport to disarm persons considered a risk to society—whether felons or alcoholics—were known to the American legal tradition"); United States v. Sanchez, 2022 WL 17815116, at *3 (holding that § 922(g)(3) is "consistent with this Nation's historical tradition of firearm regulation"); Fried, 2022 WL 16731233, at *7 ("At bottom, the historical tradition of keeping guns from those the government fairly views as dangerous—like alcoholics and the mentally ill—is sufficiently analogous to modern laws keeping guns from habitual users of controlled substances. . . . The challenged laws are consistent with the history and tradition of this Nations' firearm regulation."); United States v. Seiwert, 2022 WL 4534605, at *2 (N.D. Ill. Sept. 28, 2022) ("§ 922(g)(3) is relevantly similar to regulations aimed at preventing dangerous or untrustworthy persons from possessing and using firearms, such as individuals convicted of felonies or suffering from mental illness."); see also United States v. Connelly, 2022 WL 17829158 (W.D. Tex. Dec. 21, 2022) (holding that post-Bruen, § 922(g)(3) is constitutional under the May and Patterson precedents).

Finally, as many district courts have observed, in the aftermath of Bruen, federal gun laws have been nearly uniformly upheld. See United States v. Butts, 2022 WL 16553037, at *4 (D. Mont. Oct. 31, 2022) (collecting cases); United States v. Young, — F.3d—, 2022 WL 16829260 (W.D. Pa. Nov. 7, 2022) (collecting cases).

9

Against this backdrop, the Court agrees that § 922(g)(3) is a constitutional restriction consistent with historical tradition. Black's motion to dismiss is thus denied in this respect.

B. Void for Vagueness

Black next challenges § 922(g)(3) based on its alleged unconstitutional vagueness. There are two bases for this contention: (1) that the statute fails to define "unlawful user" and (2) that the statute fails to provide a temporal nexus between the unlawful drug use and the possession of the firearm.

A statute must define a crime with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." United States v. Edwards, 182 F.3d 333, 335 (5th Cir. 1999). When the challenge presented does not involve the First Amendment, the court's review is "as-applied" only. Id. ("[W]e examine the statute only in light of the facts of the case at hand."); accord Patterson, 431 F.3d at 836. More recently, the Fifth Circuit held that "even if a statute might be vague when applied to some situations, 'a defendant whose conduct is clearly prohibited cannot be the one making that challenge.'" United States v. Thomas, 877 F.3d 591, 599 (5th Cir. 2017) (quoting United States v. Westbrooks, 858 F.3d 317, 325 (5th Cir. 2017), vacated on other grounds, 138 S. Ct. 1323 (2018)).

In United States v. Edwards, the Fifth Circuit rejected an as-applied vagueness challenge based on the alleged lack of a temporal nexus. There, the defendant had possessed marijuana on three occasions in the six months prior to his arrest with a gun. Edwards, 182 F.3d at 335–36. That, coupled with his admission to daily use for the last

10

few years, were something "an ordinary person would understand" made him an unlawful user. Id. Thus, the statute was not vague as applied to that defendant. In United States v. Patterson, the defendant asserted a vagueness challenge because the term "unlawful user" was not defined within the statute. Patterson, 431 F.3d at 836. The Patterson court held that the Edwards analysis foreclosed Patterson's challenge, as a statute cannot be vague if it defines the offense such that the ordinary person can understand what conduct is prohibited. Id. Patterson had admitted to regular marijuana usage and admitted that he would have difficulty complying with a condition that required him not to use the drug. Id. Because the ordinary person would understand Patterson's conduct was unlawful, the statute was not unconstitutionally vague as applied to him. Id. Similarly, in May, the Fifth Circuit held that "an ordinary person would understand that May's use of marijuana"—to which he admitted—"while in possession of firearms established him as an unlawful user." May, 538 F. App'x at 465-66.

In the instant case, the Government asserts that Black admitted to law enforcement that he regularly used marijuana during the time he possessed a firearm; that he had possessed the firearm for months; and that for the past several years, he had been a daily user of marijuana. Under those facts,[2] an ordinary person would understand that Black's conduct falls within the statute's ambit. See also United States v. McCowan, 469 F.3d

---

[2] The regularity and extent of Black's marijuana use is a factual finding that should be determined by a jury, not by this Court. This Court is merely deciding the legal issues presented without engaging in any binding fact finding. Thus, this ruling does not foreclose Black's reurging of his motion after the close of the Government's case.

11

386, 391-92 (5th Cir. 2006). As such, the statute is not vague as applied to Black, and his challenge fails.[3]

III. Conclusion.

For the foregoing reasons, the Court finds that 18 U.S.C. § 922(g)(3) is not an unconstitutional restriction on the Second Amendment, nor is the statute void for vagueness. Accordingly, Black's motion to dismiss [Record Document 27] be and is hereby **DENIED**.

**THUS DONE AND SIGNED** this 6th day of January, 2023.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[3] Black also argues that courts violate the separation of powers doctrine by providing a limiting construction of § 922(g)(3) in order to save it from unconstitutional vagueness. By allowing courts to do this, instead of Congress, Black contends that the separation of powers doctrine has been violated. Aside from quoting from a Utah district court case, Black has provided no argument or analysis for this particular contention. In any event, the Court finds that the Supreme Court has acknowledged the practice of courts adopting a narrower construction of a criminal statute to avoid holding it unconstitutional, sometimes referred to as the canon of constitutional avoidance. As the Court said in United States v. Davis, "when presented with two fair alternatives, this Court has sometimes adopted the narrower construction of a criminal statute to avoid having to hold it unconstitutional if it were construed more broadly." 139 S. Ct. 2319, 2332 (2019) (internal marks omitted). This is similar to the Fifth Circuit's approach in assessing prior vagueness challenges to § 922(g)(3). This compels the rejection of Black's argument.